IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SADIE HILL MURPHY, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:17-CV-00418-AT
CITIMORTGAGE, INC. and :
BAYVIEW LOAN SERVICING, LLC, :
:
    Defendants. :

## **ORDER**

This foreclosure-related matter is before the Court on Defendant CitiMortgage, Inc.'s ("CitiMortgage") Motion to Dismiss [Doc. 13] and Defendant Bayview Loan Servicing, LLC's ("Bayview") Motion to Dismiss [Doc. 14]. In her Complaint, Plaintiff Sadie Hill Murphy alleges that Defendants failed to properly account for her loan payments on a particular property, the Welbron House, and then intentionally and erroneously initiated foreclosure proceedings on the property. She alleges that Defendants' actions caused her to file for bankruptcy to save the Welbron House and then caused her additional economic and emotional harm by virtue of the bankruptcy and its impact. Plaintiff brings a breach of contract claim, a negligence claim, and a tortious interference with property rights claim against Defendants. Defendants counter that the Complaint must be dismissed because (1) the claims are barred by Georgia's

respective statutes of limitations and (2) the Complaint fails to state a claim for relief.

## I. LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the nonmovant's favor, and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## II. BACKGROUND[1]

Plaintiff is a "100% disabled veteran of the U.S. Army." (Complaint, Doc. 1 ¶ 6.) Following her discharge from the military due to a service-related disability,

---

[1] This background section summarizes the factual allegations in Plaintiff's Complaint, which the Court construes in Plaintiff's favor consistent with the standard discussed above.

2

she worked in the Veterans Administration for a time and then began helping veterans attain housing on her own. In 2007, Plaintiff purchased a property located at 4208 Welbron Drive, Decatur, Georgia 30035 (the "Welbron House") to house veterans in need of shelter. Plaintiff originally took out a mortgage on the Welbron House with Bayrock, a lender that is not a party to this case. She pre-paid her first two payments for October and November 2007 to Bayrock before she went to the hospital for service-related injuries. Bayrock then transferred the loan to CitiMortgage, and at some unspecified time, Bayview became the servicer for this loan. (*Id.* ¶¶ 7-12.)

Plaintiff alleges that around the time of the loan transfer to CitiMortgage, Bayrock "negotiated the check" regarding Plaintiff's two pre-paid payments. (*Id.* ¶ 12.) According to Plaintiff, CitiMortgage failed to account for these two pre-paid payments and therefore erroneously considered Plaintiff to be in arrears. (*Id.* ¶¶ 12-13.) Plaintiff tried to correct this mistake with CitiMortgage and "her loan servicers" for approximately eighteen months following the loan transfer. (*Id.* ¶¶ 14-15.) On October 19, 2009, CitiMortgage "sent men to the property to break in and change the locks on the Welbron House." (*Id.* ¶ 16.) Plaintiff alleges that these actions caused her to file for bankruptcy to "halt the attempted wrongful foreclosure of her home." (*Id.* ¶ 18.)

On December 23, 2009, Plaintiff filed a Chapter 7 bankruptcy petition.

(CitiMortgage Motion to Dismiss, Doc. 13-2, Ex. A.)[2] The bankruptcy court later converted her petition to a Chapter 13 case and confirmed the Chapter 13 plan on March 21, 2011. (Complaint, Doc. 1 ¶ 19; Bayview Motion to Dismiss, Doc. 14-2, Ex. A.) Over the course of the bankruptcy case, Plaintiff paid over $87,000 into the Chapter 13 plan. (Complaint, Doc. 1 ¶ 20.) Plaintiff obtained a discharge on August 3, 2015, and the bankruptcy court closed the case on August 14, 2016.[3] (Bayview Motion to Dismiss, Doc. 14-2, Ex. A.) Although not entirely clear from the pleadings, it appears that Plaintiff was able to keep the Welbron House after the bankruptcy proceedings.

In addition to the Welbron House, Plaintiff also owned a property located at 3060 Kelley Chapel Road, Decatur, Georgia, 30034 (the "Kelley Chapel House"). Chase Home Mortgage held the mortgage for the Kelley Chapel House. (Complaint, Doc. 1 ¶ 11.) Sometime after her bankruptcy proceedings were terminated, Plaintiff lost the Kelley Chapel House in foreclosure proceedings.

Plaintiff alleges she was harmed in several ways by Defendants. In particular, she describes the following actions by Defendants as causing her harm: repeatedly communicating to her about her payment defaults when no such defaults existed (*id.* ¶ 51), sending people to break into the Welbron House

---

[2] The Court may consider certain documents outside of a complaint without converting it into motion for summary judgment, such as public records or documents attached to a motion to dismiss that are "(1) central to a plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

[3] The Complaint states that Plaintiff obtained a discharge on August 3, 2016 and the case was closed on August 14, 2016. (Complaint, Doc. 1 ¶ 21.) However, Bayview attached the docket report for the bankruptcy case to its Motion to Dismiss, and the docket shows that the respective dates are actually August 3, 2015 and August 14, 2015. (Bayview Motion to Dismiss, Doc. 14-2, Ex. A.)

and change the locks (*id.* ¶ 16), initiating "wrongful foreclosure" proceedings on the Welbron House despite her best efforts to make her loan payments (*id.* ¶¶ 18, 42), and interfering with her property rights by "creat[ing] the situation which required Plaintiff to file bankruptcy and set into action the foreseeable results of that bankruptcy" (*id.* ¶ 46). All of these actions occurred before the bankruptcy proceedings began in December 2009. Plaintiff alleges that Defendants' actions forced her to file for bankruptcy, and because of the bankruptcy, she suffered additional harm by getting a lower credit score, not being able to obtain new financing for the Kelley Chapel House or other business ventures, and ultimately losing the Kelley Chapel House to foreclosure and losing out on other business opportunities. (*Id.* ¶¶ 24-39.) She also alleges that she experienced "increased stress" and "numerous and mounting financial injuries associated with the damage to her credit score." (*Id.* ¶¶ 29, 37.) Based on these allegations, Plaintiff sued Defendants for breach of contract, negligence, and tortious interference with her property rights.

## III. DISCUSSION

Defendants separately move to dismiss the Complaint on both procedural and substantive grounds. Procedurally, both Defendants argue that the breach of contract claim is barred by Georgia's six-year statute of limitations and that the two tort claims are barred by Georgia's four-year statute of limitations. Substantively, Defendants also contend that the Complaint fails to state any claim for relief. Defendant CitiMortgage argues that (1) Plaintiff's contract with

CitiMortgage precludes her attempt to sue for tort injury; (2) CitiMortgage did not tortiously interfere with Plaintiff's property rights; and (3) Plaintiff cannot recover for emotional distress. Defendant Bayview argues that (1) it did not maintain a contractual relationship with the Plaintiff and therefore did not breach a contract; (2) it did not tortiously interfere with Plaintiff's property rights; (3) negligent loan servicing is not a cause of action under Georgia law; and (4) failure to prevail on the merits will make Plaintiff ineligible to claim punitive damages and attorneys' fees. Plaintiff opposes both Defendants' motions to dismiss and argues that her claims are neither time-barred nor lacking merit.[4]

The Court first considers Defendants' statute of limitations arguments as they may be dispositive of the case.

### A. Statute of Limitations for Plaintiff's Breach of Contract Claim

Plaintiff alleges that Defendants breached the mortgage contract for the Welbron House. In particular, she alleges that the loan documents contain "express promises and obligations by Defendants to properly account for the payments paid by the borrower." (Complaint, Doc. 1 ¶ 41.) Defendants breached

---

[4] Defendant CitiMortgage moved to strike Plaintiff's Response to the two motions to dismiss as untimely. (Doc. 17.) Plaintiff opposed CitiMortgage's motion to strike, and she also filed a motion for leave to file a sur-reply regarding the motion to strike. (Doc. 24.) Upon review, the Court **DENIES** Plaintiff's motion for leave to file a sur-reply [Doc. 24], as Plaintiff does not raise new arguments in the motion for sur-reply but simply reiterates the arguments already contained in her response to CitiMortgage's motion to strike.

Turning to CitiMortgage's motion to strike, it is true that Plaintiff filed her Response thirteen days after the deadline and without seeking the Court's leave to do so. Yet Plaintiff is also correct in pointing out that, technically, a motion to strike a responsive brief is not proper under Federal Rule of Civil Procedure 12(f), which only applies to striking pleadings. *See, e.g.*, *Chavez v. Credit Nation Auto Sales, Inc.*, 966 F. Supp. 2d 1335, 1344 (N.D. Ga. 2013). Additionally, the Court sees no real prejudice to the parties in considering Plaintiff's Response, and indeed, it would be more helpful and efficient to the Court's resolution of Defendants' motions to dismiss. The Court therefore **DENIES** CitiMortgage's Motion to Strike [Doc. 17].

6

these contractual obligations, according to Plaintiff, by "intentionally initiat[ing] foreclosure proceedings on the Welbron House notwithstanding Plaintiff's best efforts to pay her contractual obligations." (*Id.* ¶ 42.)

The mortgage contract that Plaintiff signed for the Welbron House states that the governing law is "the law of the jurisdiction in which the Property is located," which is Georgia law. (CitiMortgage's Motion to Dismiss, Doc. 20-2 at 14.) Under Georgia law, "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable." O.C.G.A. § 9-3-24. Accordingly, breach of contract claims must be brought within six years of the alleged breach, unless the plaintiff can show an applicable exception that would toll the statute of limitations. *See Hamburger v. PFM Capital Mgmt.*, 649 S.E.2d 779, 782 (Ga. Ct. App. 2007).

The Parties agree that Georgia's six-year statute of limitations governs Plaintiff's breach of contract claim, but they disagree about when the limitations period began to run and when the claim accrued. Plaintiff first argues that the continuing violation doctrine applies to her breach of contract claim. She cites to federal case law when explaining that "the continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." (Plaintiff's Response, Doc. 16 at 4 (citing *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007).) Under this theory, she alleges that the statute of limitations did not begin to run until the termination of the mortgage contract for the Welbron House on December 15,

7

2014.[5] From the time of the contract's creation on August 21, 2007 through its termination on December 15, 2014, Plaintiff asserts that Defendants "had a continuing contractual obligation to properly apply Plaintiff's payments" and that they "breached their contractual obligation to properly account for [Plaintiff's] payments . . . in a continuous manner." (Plaintiff's Response, Doc. 16 at 5-6.) Thus, Plaintiff concludes that she had to file this case no later than December 15, 2020 (i.e., six years after December 15, 2014), and that she satisfied that requirement by filing this case on February 3, 2017.

Plaintiff cites to no Georgia authority for applying the continuing violation doctrine to a breach of contract claim, and the Court finds no such authority. *See, e.g., Smith v. Sec'y, US Dep't of Hous. & Urban Dev.*, 680 F. App'x 791, 793 (11th Cir. 2017) (affirming lower court's dismissal of plaintiff's breach of contract claim as time-barred, as plaintiff cited "no law indicating that the continuing violation doctrine is applicable to Georgia breach of contract claims"); *see also Kapordelis v. Gainesville Surgery Ctr., L.P.*, No. 2:10-CV-69-RWS, 2011 WL 3652325, at *4 (N.D. Ga. Aug. 19, 2011). Plaintiff's citation to *Allapatah Servs. Inc. v. Exxon Corp.*, 188 F.R.D. 667, 679 (S.D. Fla. 1999) is unavailing, as this case did not apply Georgia law in its consideration of the "continuing breach doctrine," but generally acknowledged that some jurisdictions had adopted such a doctrine. *Id.*

---

[5] The Court notes that Defendant CitiMortgage is correct in pointing out that this fact about the mortgage contract's termination on December 15, 2014 was first presented in Plaintiff's Response. It was not alleged in the Complaint. The Court does not consider this fact for purposes of resolving the current motions to dismiss, however, but includes it here merely to reflect Plaintiff's theory of recovery.

at 679. The *Allapatah* court went on to find that the "continuing breach doctrine" did *not* toll the statute of limitations because it considered the contract to be severable instead of continuous in nature. *Id.* at 680.

Even setting aside the question about whether the continuing violation doctrine applies under Georgia law, the standard for determining when Georgia's six-year statute of limitations for contracts begins to run is O.C.G.A. § 13-6-14, which states:

> If a contract is entire, only one action may be maintained for a breach thereof; but, if it is severable or if the breaches occur at successive periods in an entire contract, an action will lie for each breach; but all the breaches occurring up to the commencement of the action must be included therein.

Georgia case law further clarifies this distinction:

> If the contract is found to be strictly divisible, the statute will run separately as to each payment or performance when it becomes due, either as an independent obligation or as a return for an installment of the counter-performance . . . . [O.C.G.A. §13-1-8] provides that a contract may either be entire or severable. In the former the whole contract stands or falls together; in the latter, the failure of a distinct part does not void the remainder. The character of the contract in such case is determined by the intention of the parties. Numerous cases have stated that the criterion for determining whether the contract is entire or severable under this rule is to be found in the question of whether the whole quantity, service, or thing, all as a whole, is of the essence of the contract, and if it appear that the contract was to take the whole or none, then the contract would be entire, but, on the other hand, *if the quantity, service, or thing is to be accepted by successive performances, then the contract may properly be held to be severable.*

*Carswell v. Oconee Reg'l Med. Ctr., Inc.*, 605 S.E.2d 879, 881 (Ga. Ct. App. 2004) (citing *Piedmont Life Ins. Co. v. Bell*, 119 S.E.2d 63, 72 (Ga. Ct. App. 1961))

9

(emphasis added). In other words, a contract is not "entire" where the "contractual consideration at issue is not a single sum certain, but an indefinite total amount which [is] payable in installments." *Carswell*, 605 S.E.2d at 881; *see also Baker v. Brannen/Goddard Co.*, 559 S.E.2d 450, 453–54 (Ga. 2002).

Here, the mortgage contract for the Welbron House states that Plaintiff, as the borrower, agreed to pay the lender (at the time, Bayrock) $108,300 in principal plus interest. The interest rate of 10.278% was charged on the unpaid principal "until the full amount of Principal has been paid." (CitiMortgage's Motion to Dismiss, Doc. 20-1, Ex. A.) The mortgage contract is therefore divisible: Plaintiff agreed to make installment payments that varied depending on the interest rate and how much unpaid principal remained. Accordingly, the statute of limitations begins to run separately as to each breach that occurred – i.e., as to each improper accounting that Defendants applied under the contract.

Plaintiff alleges that Defendants improperly applied her loan payments starting around October 2007 and through the point that she filed for bankruptcy on December 23, 2009. (Complaint, Doc. 1 ¶¶ 12-18.) She does not allege, however, that Defendants continued to improperly apply her loan payments *after* she filed for bankruptcy. Rather, she alleges that "her creditors were subject to the automatic stay of the bankruptcy code." (*Id.* ¶ 26.) Thus, even when liberally construing the Complaint as alleging successive breaches up through December 23, 2009, the six-year statute of limitations would run from that date and would

bar Plaintiff's claim filed on February 3, 2017.[6] The continuing violation doctrine does not save Plaintiff's breach of contract claim from dismissal.

Additionally, Plaintiff argues that the limitations period does not begin to run "until the latest element of damages was suffered on August 2016 with the loss of the Kelley Chapel property." (Plaintiff's Response, Doc. 16 at 9.) Georgia law is clear, however, that in contract actions, "[t]he time of breach controls, not the time the damages result or are discovered." *Dillon v. Reid*, 717 S.E.2d 542, 547 (Ga. Ct. App. 2011) (citing *Gamble v. Lovett Sch.*, 350 S.E.2d 311, 312 (Ga. Ct. App. 1986)); *see also Bridge Capital Inv'rs II v. Small*, 185 Fed. App'x 836, 838 (11th Cir. 2006) (applying Georgia law). "[T]he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result," and "[a]ctual damage is not essential [at that time], [since] the right of action has its inception upon the breach of duty." *Gamble*, 350 S.E.2d at 313 (internal quotations omitted).

As discussed above, the Complaint alleges that Defendants' breach (i.e., misapplication of Plaintiff's loan payments) may have occurred as late as

---

[6] In her Response, Plaintiff argues that she is "not yet able to specify every particular date of breach for misapplication of funds paid towards the mortgage" in the absence of full discovery. (Plaintiff's Response, Doc. 16 at 6.) This argument implies that Plaintiff will be able to show Defendants misapplied her funds after December 23, 2009. But Plaintiff does not allege facts in her Complaint that Defendants continued to misapply her loan payments after she filed for bankruptcy on December 23, 2009, or that her loan payments were higher after this point because of Defendants' prior crediting errors. The Court anticipates that Plaintiff and her counsel had access to Plaintiff's own financial records to be able to make such allegations. But she failed to do so, and she cannot make new allegations for the first time in her Response. *See, e.g.*, *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.").

December 23, 2009, but not afterward, so the limitations period would still begin to run from that date. Moreover, to the extent Plaintiff argues she did not discover the alleged breach of contract until after the Kelley Chapel House foreclosure, this argument also does not toll the limitations period. There is no "discovery rule" applicable to Georgia breach of contract claims as may be applicable to certain tort claims. *Moore v. Dep't of Human Res.*, 469 S.E.2d 511, 512 (Ga. Ct. App. 1996).

Accordingly, Plaintiff's breach of contract claim is time-barred.

### B. Statute of Limitations for Plaintiff's Tort Claims

Plaintiff alleges two tort claims against Defendants: negligence and tortious interference with property rights. She alleges negligence based on Defendants' duty to service Plaintiff's loan with "reasonable care and attention" and their breach of that duty "when they repeatedly informed her of her payment defaults when none existed." (Complaint, Doc. 1 ¶¶ 50-51.) As a direct result, Plaintiff claims that she lost the Kelley Chapel House and suffered physical and emotional distress. (*Id.* ¶ 54.) Additionally, she alleges tortious interference with property rights based on Defendants' breach of duty "when it created a situation which required Plaintiff to file bankruptcy and set into action the foreseeable results of that bankruptcy." (*Id.* ¶ 47.)

Under Georgia law, the statute of limitations for personal injury is two years, which would apply to Plaintiff's allegations of physical and emotional distress as part of her negligence claim. O.C.G.A. § 9-3-33. The statute of

limitations for trespass upon property or for injury to personal property is four years, which would apply to Plaintiff's allegations of economic harm as part of her negligence and tortious interference claims. O.C.G.A. §§ 9-3-30, 9-3-31. Plaintiff runs into the same problems with her two tort claims as with her breach of contract claim. Even if the continuing violation doctrine applied,[7] Plaintiff does not allege facts that Defendants continued to breach the duties they owed to her beyond December 23, 2009 – the last date on which Defendants allegedly failed to exercise proper care when accounting for her loan payments before she filed for bankruptcy. She merely alleges the ongoing *consequences* of Defendants' earlier actions. Thus, to satisfy the four-year limitations period – the longest time-frame available to bring her tort claims – she would have had to file her Complaint no later than December 23, 2013, which she did not do.

Plaintiff's tort claims are therefore time-barred as well.

### C. Leave to Amend

In her Response, Plaintiff seeks leave to amend the Complaint in the event the Court finds it deficient for some reason. (Complaint, Doc. 1 ¶ 3-4.) However, the Court finds that granting leave to amend in this case would be futile. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.") Plaintiff has not alleged or offered any

---

[7] Furthermore, to the extent Plaintiff seeks to recover for injury to her property rights, Georgia courts have held that "[n]either the discovery rule nor the continuing tort theory is applicable to actions involving only damage to real property." *Mitchell v. Contractors Specialty Supply, Inc.*, 544 S.E.2d 533, 535 (Ga. Ct. App. 2001).

13

additional facts that would save her claims from being time-barred as discussed above. Consequently, the Court denies Plaintiff's request for leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss [Docs. 13, 14]. The Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 31st day of January, 2018.

_____
**Amy Totenberg**
**United States District Judge**